**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**MATTHEW B. YOUNG,**                    CASE NO.:

      Plaintiff,

vs.

**TRANS UNION LLC, and**
**FIRST PREMIER BANK.**

      Defendants.                    <u>JURY TRIAL DEMANDED</u>
_____/

<u>**COMPLAINT**</u>

Plaintiff, Matthew B. Young (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues Defendants, Trans Union LLC (hereinafter "TransUnion") and First Premier Bank. (hereinafter "First Premier") (TransUnion and First Premier are hereinafter collectively referred to as "Defendants") and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") against Defendants.

<u>**PRELIMINARY STATEMENT**</u>

1.     The FCRA was enacted to promote accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, and in doing so, promote the efficiency and public confidence in the banking system.

2.     The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in

accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

3.      Defendants have violated the FCRA with respect to Plaintiff by failing to correct inaccuracies on his credit report.

4.      Plaintiff brings claims for statutory, actual and punitive damages against Defendants for their inaccurate credit reporting and for their failure to investigate Plaintiff's disputes of that inaccurate credit reporting.


**JURISDICTION AND VENUE**

5.      The jurisdiction for this Court is conferred by 28 U.S.C. § 1331.

6.      Venue is proper in this District as Plaintiff resides in this District, the violations described in this Complaint occurred in this District, and the Defendants transact business within this district. 28 U.S.C. § 1391(b)(2).

**PARTIES**

7.      Plaintiff is a natural person and resident of Jacksonville, Duval County, within the State of Florida.

8.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9.      The debt in question in this matter is a consumer debt pursuant to the FCRA.

10.      TransUnion is a foreign limited liability company with its principal place of business in Chicago, Illinois and is authorized to do business in the State

of Florida through its registered agent The Prentice-Hall Corporation System, Inc. located at 1201 Hays St., Tallahassee, FL 32301.

11.    TransUnion is a "consumer reporting agency" as defined in 15 USC § 1681a(f).

12.    TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

13.    TransUnion disburses such consumer reports to third parties under contract for monetary compensation.

14.    First Premier is a for profit corporation with its principal place of business located at 601 S. Minnesota Avenue, Sioux Falls, SD 57104, and conducts business, services accounts, and attempts to collect debts within the State of Florida.

15.    First Premier is a "furnisher" of credit information as defined in 15 U.S.C. § 1681s-2(a) and (b).

## FACTUAL ALLEGATIONS

### *Collection Activities and Credit Reporting*

16.    In or around August 2020, Plaintiff discovered that a fraudulent First Premier Bank account was being reported on his Equifax credit report.

17.    Plaintiff never authorized First Premier to open the account, Plaintiff never applied, nor did he co-sign with anyone to open the First Premier account. Plaintiff has never had any relationship with First Premier.

3

18.     Plaintiff called and spoke to several First Premier agents throughout the relevant time.  Plaintiff repeatedly informed First Premier that he did not owe this money, he never authorized the account, and he never received any benefits from the account.   With each communication, Plaintiff provided all the necessary information for First Premier to determine Plaintiff did not owe the debt.

19.     On August 4, 2020, Plaintiff mailed a letter directly to First Premier. Within the letter, he explained that the fraudulent First Premier account was opened with a Miami, Florida address of 7717 NW 22nd.  Plaintiff has never resided or visited such address.  Plaintiff does not know anyone who has ever resided there. Plaintiff was residing in South Carolina during the time when the fraudulent account was opened.  Plaintiff attached to the letter his lease agreement during the time the account was opened (Lease in Spartanburg, South Carolina).

20.     On August 10, 2020, Plaintiff Spoke with Chelsea from First Premier and again disputed the account.  Plaintiff explained why it was not his account. Chelsea indicated the investigation was still on going.

21.     On August 13, 2020, Plaintiff received a letter indicating that the fraudulent account was validated by First Premier since First Premier had communicated with the alleged account holder.

22.     Plaintiff became upset and disputed through Equifax the fraudulent reporting by First Premier.  Plaintiff again Explained that the Miami address on the application was a place he has never lived at, visited, or he has never known someone who lived there.

4

23.    Upon information and belief, Equifax sent the letter to First Financial but First Financial failed to conduct a reasonable investigation and verified the account.

24.    Plaintiff was incredibly upset as he had hit a wall and could not fix the misreporting by First Financial.

25.    Plaintiff was unaware at the time that First Financial was also reporting the derogatory account to Trans Union, and that Trans Union was publishing the fraudulent account to any potential creditor.

26.    Plaintiff was attempting to purchase a vehicle and attempted to do so on September 9, 2020.  Plaintiff's application went through Volkswagen Credit and O Steen Volvo.  Both hard inquiries appear on Plaintiff's Trans union credit report as both entities received Plaintiff's Trans Union Report with the derogatory information.  Plaintiff was approved for the auto loan but with a higher interest rate than he would have received if First Financial was not reporting the fraudulent account.

27.    On august 16, 2021, Plaintiff realized that Trans Union was reporting the fraudulent debt.    Plaintiff called Trans Union, and after going through a verification process, he spoke to Tracy.   Tracy explained the dates the account was opened, first delinquency, and the date it was closed.    Plaintiff disputed the account and related to Trans Union that he never applied for that account.

28.    Plaintiff immediately called First Premier and spoke to Susan (877-358-5002).    Plaintiff again disputed the account, but Susan indicated any

information requested about the account would have to be requested in writing. Plaintiff provided First Financial all the information necessary to determine that the account was fraudulent.   Despite all the information presented to First Financial, First Financial chose to continue to report the fraudulent account to all three credit reporting agencies.

29.    On or about August 16, 2021, Plaintiff also reported the fraud to the Consumer Financial Protection Bureau (CFPB) File ID 210818-7108459.  Plaintiff detailed the fact he never applied for the account, never received any benefits from the account, nor did he authorized anyone to do it.

30.    Plaintiff also filed, that same day, a complaint with Consumer Financial Protection Bureau (CFPB – ID 210818-7108459).

31.    Since the CFPB complaint, the FTC complain, the communications directly with First Financial, or the conversations with Trans Union would not solve the problem, Plaintiff was forced to send a detailed written dispute to Trans Union.

32.    In or around October 12, 2020, Plaintiff mailed Trans Union a detailed dispute letter about the fraudulent First Premier account.   The letter was sent via USPS Certified Mail.  The dispute letter was delivered on October 16, 2020.

33.    The detailed dispute letter to Trans Union was four (4) pages long.   It included an image of Plaintiff's Florida Driver's license.   It also disputed the fact that Trans Union and First Premier were referring to Plaintiff as Matthew "G" Young instead of his real name, Matthew Benjamin Young.

6

34.    The dispute letter included images of Trans Union's depiction of the fraudulent tradeline which was reporting as "Delinquency over 60 days", "Charged off", and no payments ever made.   The tradeline was significantly lowering Plaintiff's credit score and credit worthiness.

35.    Within the dispute letter, Plaintiff also mentioned that he had filed a Consumer Financial Protection Bureau (CFPB – ID 210818-7108459) and a Consumer Financial Protection Bureau (CFPB – ID 210818-7108459)

36.    Upon information and belief, TransUnion provided First Financial with notice of Plaintiff's dispute letter via E-Oscar. According to the FCRA, Trans Union must have provided Plaintiff's four-page dispute letter to First Premier.

37.    On November 4, 2021, TransUnion responded to Plaintiff's dispute letter and advised Plaintiff that it had investigated the dispute, and the disputed information was verified as accurate and updated. Trans Union did no independent investigation and simply parroted back the inaccurate result from First Premier.  Trans Union could have determined that the ONLY tradeline within Plaintiff's report reflecting the 7717 NW 22nd Miami address, was the First Financial tradeline.   Moreover, the account was opened, maxed out, and no payments were ever made.  Trans Union was aware that Plaintiff was residing in South Carolina and not Miami at the time the account was opened.

38.    First Financial verified the inaccurate information it was furnishing to TransUnion about Plaintiff despite all the conversations with Plaintiff, and despite having received several images reflecting the fraud.

39.    Plaintiff was devested by the Trans Union results.   On November 4, 2021, Plaintiff immediately re-disputed with Trans Union including more information about the fraud.

40.    Again, on November 28, 2021, TransUnion responded to Plaintiff's dispute letter and advised Plaintiff that it had investigated the dispute, and the disputed information was verified as accurate and updated. Trans Union again failed to conduct an independent investigation.

41.    Upon information and belief, TransUnion provided First Financial with notice of Plaintiff's November 4 dispute letter via E-Oscar.

42.    First Financial verified the inaccurate information it was furnishing to TransUnion about Plaintiff without making any attempts to communicate with Plaintiff or to address Plaintiff's FTC and CFPB complaints.   First Financial had been aware of the fraud allegations for almost 15 months and continued to willfully hurt Plaintiff's credit report/score.

43.    What infuriated Plaintiff was that Plaintiff had sent Experian an almost identical dispute letter about the First Financial tradeline.   Experian conducted a reasonable investigation, and on November 16, 2021 (Report # 1790-2620-21) deleted the account.   Moreover, Equifax at the same time, received a similar dispute letter, it also deleted the fraudulent account.

**FIRST PREMIER BANK**

Account · 517800XXXXXXXXX

This item was removed from your credit report. Please review your report for the details.

You can contact FIRST PREMIER BANK at 601 S MINNESOTA AVE, SIOUX FALLS , SD 57104 or (800) 987-5521



Deleted

44.    Upon information and belief, Equifax and Experian reported the deletion of the fraudulent account to First Premier.   The FCRA mandates that a consumer reporting agency notifies the furnisher (First Premier) when the CRA corrects or deletes information as a result of its reinvestigation.  Such notification trigger First Premier to conduct a re-investigation and to notify the other CRAs.

45.    Upon information and belief that Equifax and Experian sent Trans Union a carbon copy of their decision to delete the fraudulent account.

46.    Despite all the notices by third parties, the Defendants continued to report the fraudulent account.

47.    On December 23, 2021, Plaintiff mailed a seven (7) page dispute letter to Trans Union via USPS Certified Mail 70211970000036986643 to PO Box 2000, Chester PA 19022.   Trans Union received the letter on December 27, 2021.  The dispute letter included all the necessary information for Trans Union to conduct an independent investigation and to delete the trade line.  The dispute letter included an image of First Premier correspondence with the wrong name, Matthew "G" Young. The letter included images of the FTC report, images of Plaintiff's driver's license and a full explanation of the chronology of disputes.   Plaintiff also

included his phone number and email address.  Trans Union never called or email Plaintiff about any of his several dispute.

48.    While the dispute was pending, and since Plaintiff had no faith on the investigation process by Trans Union, he communicated with Trans Union to freeze his Trans Union Account.  Trans Union rejected his request to "freeze" on a letter dated December 31, 2021.  Trans Union indicated; they believed his "request was made in error".

49.    Upon information and belief, Trans Union again communicated the dispute letter from December 23, 2021, to First Financial.  First Financial again failed to do a reasonable investigation and simply verified, updated, and continued to report the inaccurate account.  Despite all the correspondence from Plaintiff, the recording of the phone calls First Financial maintained, the notices from the CRAs, and the disputes, First Financial recklessly verified the fraudulent account.

50.    Inexplicably, on January 14, 2022, Trans Union verified the fraudulent account. Trans Union sent Plaintiff File Number 406566179-048 which contained:

INVESTIGATION RESULTS - VERIFIED AS ACCURATE AND UPDATED:  The disputed item(s) was verified as accurate; however, other information has also changed.

FIRST PREMIER BANK #517800667586**** ( 3820 N LOUISE AVE, SIOUX FALLS, SD 57107, (800) 987-5521 )
We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**; however, we updated: **Historical Trended Data**.  Here is how this account appears on your credit report following our investigation.

| Date Opened: | 08/19/2017 | Balance: | $655 | Pay Status: | >Charged Off< |
| Responsibility: | Individual Account | Date Updated: | 12/05/2021 | Terms: | Paid Monthly |
| Account Type: | Revolving Account | Payment Received: | ($0) | Date Closed: | 11/08/2017 |
| Loan Type: | CREDIT CARD | High Balance: | $655 | >Maximum Delinquency of 60 days in 11/2017 | |
| | | Original Charge-off: | $655 | for $110< | |
| | | Credit Limit: | $500 | | |

10

51.    The most outrageous issue with the verification was that plaintiff had received a letter, while the investigation was pending, from First Premier indicating the tradeline was going to be deleted.



52.    Plaintiff couldn't believe the answer from Trans Union.

53.    Plaintiff mailed another dispute to Trans Union in January 2022. Trans Union responded on February 10, 2022, indicating "It didn't appear you or a properly authorized party sent it to us."  Plaintiff was the individual who sent that dispute letter as he did all others.



We applaud your recent efforts to take charge of your credit. We want you to know we're on your side, and we're here to help support you on your path toward credit health.

We recently received a request that included your information, but it didn't appear that you or a properly authorized third party sent it to us. We take the privacy and security of your data very seriously, so we won't process requests unless they come directly from you or an authorized third party. If you're working with a third party such as a credit repair company or "credit clinic", they have to identify themselves in their communications to us, and provide proof that you've authorized them to communicate with us on your behalf.

54.    On February 2, 2022, and based on Trans Union's rejection of his dispute, and the fact that it was still showing, Plaintiff mailed another direct dispute to First Financial Bank.   Plaintiff included the FTC report, his Bank of America statement

11

demonstrating he lived in South Carolina, and the consumer statements found within his credit report.

55.    Plaintiff is unsure if Trans Union ever communicated the detailed dispute from January 2022 to First Financial.  Plaintiff can only assume it did not, since First Financial <u>again</u>, allegedly determined Plaintiff was not "responsible for the disputed account".



First PREMIER® Bank
P.O. Box 5524
3820 N. Louise Ave.
Sioux Falls, SD  57117-5524

February 8, 2022

MATTHEW G YOUNG

Dear MATTHEW G YOUNG:

Thank you for contacting us regarding your First PREMIER Bank credit card account ending in 1829.

We have completed our investigation and have determined you are not responsible for the disputed account.  We have sent notification to the consumer reporting agencies to remove the account from your credit history.  Please allow up to 90 days for the update to reflect on your credit report.  If you would like additional information regarding your credit report, please utilize the following consumer reporting agencies:

**Experian**
PO Box 919
Allen, TX 75013
1-888-397-3742
www.experian.com

**Equifax Information Services, LLC**
PO Box 740241
Atlanta, GA 30374-0241
1-800-685-1111
www.equifax.com

**TransUnion**
2 Baldwin Pl
PO Box 1000
Chester, PA 19022
1-800-888-4213

**Innovis**
PO Box 1689
Pittsburgh, PA 15230-1689
1-800-540-2505
Fax: 1-877-314-0117
www.innovis.com

56.    Inexplicably, after February 8, 2022, First Financial continued to report the fraudulent account to Trans Union.   Trans Union continued to publish the fraudulent account.

57.    Plaintiff reviewed his Trans Union report on March 1, 2022, to find the First Premier account still reporting.

58.    On March 13, 2022, Plaintiff mailed another Certified letter to Trans Union.  The dispute was now 8 pages, and it included all the previously provided images and evidence, but moreover the letter from First Financial acknowledging the fraud.  The dispute letter was delivered on March 17, 2022.

Tracking number 70210350000213781875

**Delivered** ⊘
March 17, 04:42PM
Chester, PA

59.    While waiting for the dispute results, and with no hope of Trans Union or First Financial deleting the fraud account, Plaintiff applied for a mortgage as he had held off for nearly 19 months while attempting to fix the misreporting by First Financial.

60.    Plaintiff applied for the mortgage through Rocket Mortgage, and he was provided a high interest rate.  The hard inquiry from Rocket Mortgage is found within Plaintiff's Trans Union credit report.

61.    Plaintiff waited the 30 days and never received a response from Trans Union.  On April 20, 2022, Plaintiff again checked his Trans Union Credit report

to find the First Premier derogatory account still showing.  It was the first account on his entire report.

62.    Trans Union failed to respond to Plaintiff's 8 pages detailed dispute is a complete violation of the FCRA.

63.    On April 29, 2022, Plaintiff was distraught and mailed another dispute letter via USPS Certified Mail.  This time, 11 pages.

64.    On May 5, 2022, after almost 21 months, First Financial and Trans Union finally believed Plaintiff and deleted the fraudulent account.

Date Issued:        05/05/2022

### Your Investigation Results

INVESTIGATION RESULTS - DELETED:  The disputed item(s) was removed from your credit report.

FIRST PREMIER BANK #517800667586**** ( 3820 N LOUISE AVE, SIOUX FALLS, SD 57107, (800) 987-5521 )
In response to your dispute, this item was DELETED from your credit report.

65.    Neither TransUnion nor First Financial conducted any meaningful investigations into Plaintiff's dispute.

66.    Plaintiff's credit score dropped significantly due to the actions and/or inactions of the Defendants.  Plaintiff's FICO credit score reduction was based on Defendant's reckless actions.  Trans Union was the ONLY CRA

reporting the First Premier derogatory tradeline.



67.    Plaintiff has wasted countless hours of his personal time dealing with this problem.

68.    Plaintiff has suffered from unnecessary and unwanted stress, frustration, sleeplessness, mental anguish and anger as a result of the action and/or inaction of the Defendants.

69.    Due to the inaccurate reporting, Plaintiff has been damaged in the form of inability to obtain consumer credit, subjected to a higher interest rate on a mortgage if finalized, and denial of an auto loan.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 15 U.S.C. § 1681e(b)
### (TransUnion)

70.    Plaintiff re-alleges and reincorporates paragraphs 1 through 69, as if fully set forth herein.

71.    Trans Union is subject to and violated the provisions of 15 U.S.C. §1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credits reports and credit files published and maintained concerning Plaintiff.

72.    Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report. Trans Union allowed for accounts deleted by other CRAs to remain reporting within its reports.

73.    Trans Union recklessly allows for disputes by consumers (like Plaintiff's) to be identified as from "unauthorized "sources to avoid conducting investigations.

74.    Trans Union recklessly fails to respond to disputes sent by consumers via USPS Certified Mail.

75.    The inaccuracies included in Plaintiff's credit report are due to TransUnion's failure to follow reasonable procedures to assure the maximum possible accuracy of his credit file.  The only account identifying the fraudulent of 7717 NW 22nd Miami address was the disputed account.

76.    Trans union also fails to have policies and procedures that identify accounts that are opened, immediately maxed out, and no payments are ever made as potential fraud.

77.    Specifically, had Trans Union conducted a reasonable investigation to determine whether the disputed information was inaccurate, Trans Union would

have discovered that the contents of Plaintiff's dispute letters were correct and accurate.

78.     Plaintiff has suffered injury which was caused by the inclusion of this inaccurate information on his credit report.

79.     TransUnion's actions were a direct and proximate cause, as well as a substantial factor in, the serious injuries, damages and harm to Plaintiff.

WHEREFORE, Plaintiff requests the following relief:

     i.    Find TransUnion in violation of 15 U.S.C. §1681e(b);

    ii.    Award any actual damages to Plaintiff as a result of TransUnion's violations;

   iii.    Award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

   iv.    Award any punitive damages, as the Court may allow;

    v.    Award the costs of the action, together with any attorney's fees incurred in connection with such action as the Court may deem to be reasonable under the circumstances; and

   vi.    Award such other relief as this Court deems just and proper.

**COUNT II**
**VIOALTION OF 15 U.S.C. § 1681i(a)(1)**
**(TransUnion)**

80.     Plaintiff re-alleges and reincorporates paragraphs 1 through 69, as if fully set forth herein.

81.    TransUnion is subject to, and violated the provisions of, 15 U.S.C. §1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file.

82.    Specifically, TransUnion willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

83.    Had TransUnion conducted a reasonable re-investigation to determine whether the disputed information was inaccurate, TransUnion would have discovered that the contents of Plaintiff's dispute letters were correct and accurate.

84.    Such reporting is false and evidences TransUnion's failure to conduct reasonable re-investigations of Plaintiff's disputes.

85.    TransUnion's re-investigation of Plaintiff's disputes was not conducted reasonably.

86.    TransUnion's re-investigations of Plaintiff's disputes were not conducted in good faith and were unreasonable. Trans Union ignored all the evidence provided by Plaintiff and failed to conduct a reasonable investigation. Trans Union ignored acknowledgements from First Premier that the account was fraudulent.

87.     TransUnion's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to TransUnion.  Plaintiff provided his cell phone and email but Trans Union does not allow its foreign investigators to call consumers who are disputing accounts.

88.     TransUnion's re-investigations were per se deficient by reason of these failures in TransUnion's re-investigations of Plaintiff's disputes.

**WHEREFORE**, Plaintiff requests the following relief:

i.     Find TransUnion in violation of 15 U.S.C. §1681i(a)(1);

ii.    Award any actual damages to Plaintiff as a result of TransUnion's violations;

iii.   Award any additional damages, as may be allowed, in an amount not to exceed $1,000.00 for each such violation;

iv.    Award any punitive damages, as the Court may allow;

v.     Award the costs of the action, together with any attorney's fees incurred in connection with such action as may be deemed to be reasonable under the circumstances; and

vi.    Award such other relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF 15 U.S.C. § 1681i(a)(4)**
**(TransUnion)**

89.     Plaintiff re-alleges and reincorporates paragraphs 1 through 69, as if fully set forth herein.

90.    Trans Union is subject to, and violated the provisions of, 15 U.S.C. §1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes.

91.    Had TransUnion reviewed and considered all information received in Plaintiff's disputes, TransUnion would have discovered that the dispute letters were correct and accurate.

92.    TransUnion willfully and/or negligently failed to review and consider all information received in Plaintiff's disputes.

93.    TransUnion's failure to review and consider all information received in Plaintiff's disputes, constitute negligent or willful noncompliance with the FCRA. Trans Union received multiple disputes of several pages and several images but failed to conduct any independentinvestigation.

94.    TransUnion failure to review and consider all information received in Plaintiff's disputes, was done in bad faith.

**WHEREFORE**, Plaintiff requests the following relief:

i.    Find TransUnion in violation of 15 U.S.C. §1681i(a)(4);

ii.    Award any actual damages to Plaintiff as a result of TransUnion's violations;

iii.    Award any additional damages, as may be allowed, in an amount not to exceed $1,000.00 for each such violation;

iv.    Award any punitive damages, as the Court may allow;

v.  Award the costs of the action, together with any attorney's fees incurred in connection with such action as may deemed to be reasonable under the circumstances; and

vi.  Award such other relief as deemed just and proper.

## COUNT IV
## VIOALTION OF 15 U.S.C. § 1681i(a)(5)
### (TransUnion)

95.  Plaintiff re-alleges and reincorporates paragraphs 1 through 69, as if fully set forth herein.

96.  TransUnion is subject to, and violated the provisions of, 15 U.S.C. §1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's dispute as inaccurate or that could not be verified.

97.  Specifically, despite receiving Plaintiff's dispute letters, TransUnion willfully and/or negligently failed to update or delete the inaccurate information on Plaintiff's report.

98.  TransUnion's actions were a direct and proximate cause of, as well as a substantial factor in, Plaintiffs' injuries, damages, and harm as more fully stated herein.

**WHEREFORE**, Plaintiff requests the following relief:

i.  Find TransUnion in violation of 15 U.S.C. §1681i(a)(5);

ii.  Award any actual damages to Plaintiff as a result of TransUnion's violations;

iii.   Award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

iv.   Award any punitive damages, as the Court may allow;

v.   Award the costs of the action, together with any attorney's fees incurred in connection with such action as the Court may deem to be reasonable under the circumstances; and

vi.   Award such other relief as this Court deems just and proper.

**COUNT V**
**VIOLATION 15 U.S.C. §1681s-2(b)**
**(First Financial)**

99.   Plaintiff re-alleges and reincorporates paragraphs 1 through 69, as if fully set forth herein.

100.   First Financial violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute; by failing to review all relevant information regarding same; by failing to accurately respond to TransUnion; by failing to correctly report results of an accurate investigation to TransUnion; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the debt at issue to TransUnion.

101.   First Financial violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to TransUnion after First Financial had been notified that the information was inaccurate.   First Financial took no steps to contact the Plaintiff during the disputes.

102.  First Financial violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to TransUnion that First Financial knew was inaccurate. First Financial should also have received notices from Equifax and Experian when they determined the account as fraud and deleted the account.

103.  First Financial mailed two letters to Plaintiff acknowledging the fraudulent account but First Financial failed to send an AUD to Trans Union to delete the account.

104.  As a result of the conduct, action and inaction of First Financial, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and increased interest charges.

105.  First Financial conduct, action, and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

106.  Plaintiff is entitled to recover attorney's fees and costs from First Financial in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, First Financial, for statutory damages, actual damages, punitive damages, costs, interest, attorney fees, enjoinder from

further violations of these parts and any other such relief the Court may deem just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: this 10th day of June, 2022.

Respectfully Submitted,

> */s/ Octavio "Tav"Gomez*
> Octavio "Tav" Gomez, Esq.
> Florida Bar No.: 0338620
> Georgia Bar No.: 617963
> Pennsylvania Bar No.: 325066
> The Consumer Lawyers PLLC,
> 3210 West Cypress St.
> Tampa, Florida 33607
> Telephone: 844-855-9000
> Facsimile: 844-951-3933
> Tav@TheConsumerLawyers.com
> Jason@TheConsumerLawyers.com
> *Counsel for Plaintiff*